IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

BENSON J. FISCHER,                         *

    Plaintiff,                          *

  v.                                     *    Civil Action No. 8:25-cv-02286-PX

NAUTICAL BOWLS FRANCHISING, LLC,   *
et al.,
                                       *
    Defendants.
                                      ***

**<u>MEMORANDUM OPINION</u>**

Pending in this defamation and false light case is a Motion to Dismiss filed by Defendants

Nautical Bowls Franchising, LLC ("Nautical Bowls"), Bryant Amundson, and Rachel Amundson.

ECF No. 8.  The issues are fully briefed, and no hearing is necessary.  *See* Loc. R. 105.6.  For the

following reasons, the motion is GRANTED.

## I.    Background

The Court accepts the Complaint facts as true and most favorably to pro se Plaintiff, Benson

J. Fischer.  *See Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997).  Fischer is the founder

and President of ZivZo, LLC d/b/a ZivZo Marketing, Advertising & Video Production Agency

("ZivZo") which develops marketing and advertising programs for corporate clients.  ECF No. 1

¶ 12–13.  Over the past 45 years, Fischer has developed experience in "acquiring, designing,

constructing, and operating" over 50 franchise restaurants in the Washington metropolitan area,

including Yummy Yogurt and Papa John's Pizza.  *Id*. ¶ 11.

In May of 2024, Doctor Hassan Tetteh, a Maryland resident who is not a party to this suit,

asked for Fischer's help regarding the purchase from Nautical Bowls three franchise-location

options, or "pins," in Maryland.  ECF No. 1 ¶ 14.  Nautical Bowls is a franchisor of sites which

1

sell healthy, fresh superfood bowls, offering prospective franchisees "the guidance of [Nautical Bowls'] experienced executive team, raving guest testimonials, [a] low-cost startup plan, [a] highly profitable business model, and exceptional marketing support." *Id*. ¶ 15. On Nautical Bowls' recommendation, Dr. Tetteh also purchased a delivery vehicle and had it wrapped with Nautical Bowl advertising. *Id*. ¶ 16.

Fischer researched the pins that Dr. Tetteh had purchased and concluded that investing further was not advisable. ECF No. 1 ¶ 17. Fischer tried to obtain from Nautical Bowls a refund for Dr. Tetteh, to no avail. *Id*. ¶¶ 18–19. Nautical Bowls also made clear that Dr. Tetteh himself could not resell the pins. *Id*. ¶ 19. Based on Fischer's due diligence for Dr. Tetteh, Fischer concluded that Nautical Bowls had misrepresented material facts to well over a dozen of its franchisees to fraudulently induce investment in the franchise. *Id*. ¶ 23. Fischer, in turn, asked his attorney, Richard Schimel, to represent the franchisees in a potential action against Nautical Bowls. *Id*. ¶ 24. Sixteen franchises ultimately pursued claims against Nautical Bowls, with Fischer as their "consultant." *Id*. ¶¶ 25–26.

Evidently at some point, the franchisees and Nautical Bowls tried to mediate their claims. ECF No. 1 ¶ 38. During that time, Nautical Bowls CEO, Bryant Amundson, with Rachel Amundson's "approval," emailed the franchise owners the "details" of court decisions involving Fischer. *Id*. ¶¶ 28-30. Although Fischer attaches the alleged offending email to his response, ECF No. 12-3, and the Court considers the email as integral to the pleading, *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007), the Complaint does not specify which statements in the email are false or the bases for so concluding.

On March 25, 2025, Nautical Bowls sent Fischer a cease-and-desist letter. *Id.* ¶ 31. Counsel for Nautical Bowls also communicated to Schimel that Fisher had been a "distraction"

during mediation and requested that Fischer disengage from the mediation process.  *Id*. ¶ 38.

Around the same time, a blogger named Dennis Yu published an on-line "digital audit" of Nautical Bowls (the "digital audit" or "audit").  ECF No. 1 ¶¶ 34, 42.  Yu had some previous involvement in promoting Nautical Bowls in that he collaborated with Bryant Amundson on a YouTube video that discussed marketing strategies for Nautical Bowls, and he also published an article casting Nautical Bowls in a favorable light.  *Id.* ¶ 32.  Yu, however, was not a fan of Fischer.

In addition to publishing the digital audit, Yu purchased the domain name https://benson-fischer.com.  ECF No. 1 ¶ 63.  The link sent anyone who clicked on it to the digital audit.  *Id*.  The digital audit reads as a survey of the financial and business health of Fischer and ZivZo.  *Id*. ¶¶ 43–46.[1]  In the audit, Yu also opined that Fischer's career bespoke "a pattern of starting and exiting numerous businesses," and a "lack of enduring successes."  *Id*. ¶ 45.  The audit further described Fischer's stated prodigious marketing experience as a "false claim," and highlighted that Fischer had over $1,000,000 in unpaid judgements.  *Id*. ¶¶ 54, 61.

According to Fischer, Nautical Bowls retained Yu to target and "destroy[]" Fischer through an online publication rife with "inaccurate," "disparaging," "cherry picked" vignettes.  ECF No. 1 ¶¶ 36–37, 44.  Fischer, in turn, asked Yu to remove the digital audit for fear that it would "kill his business."  *Id*. ¶ 49.  Yu refused.  *Id.*

From this, Fischer filed this suit against Nautical Bowls and Bryant and Rachel Amundson. ECF No. 1.  The Complaint asserts two claims against all Defendants: "Invasion of Privacy—False Light" (Count I) and "Defamation" (Count II).  *Id*. ¶¶ 51–67.  Defendants move to dismiss the Complaint for lack of subject matter jurisdiction pursuant to 28 USC § 1331, lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), improper venue pursuant to Rule

---

[1] The Court takes judicial notice that this link is still active (last visited March 16, 2026).

12(b)(3), insufficient service of process under Rule 12(b)(5), and failure to state a claim pursuant to Rule 12(b)(6). The Court first turns to whether it retains the power to hear this case.

## II.    Discussion

### A.    Subject Matter Jurisdiction

Defendants first contend that the Court lacks subject matter jurisdiction because Fischer includes no federal statutory causes of action. ECF No. 8 at 2. That may be true. But the Court does retain diversity jurisdiction, nonetheless. *Sizer v. Oshinnaiye*, No. CV ELH-19-569, 2020 WL 263493 at * 5 (D. Md. Jan. 17, 2020). Diversity jurisdiction exists where the amount in controversy exceeds $75,000 and where no plaintiff is a citizen of the same state as any defendant. 28 U.S.C. § 1332(a); *see Johnson v. Am. Towers, LLC*, 781 F.3d 693, 704 (4th Cir. 2015). "An individual is a citizen of the state in which [he] is domiciled." *Id.* at 937 n.2. Fischer avers damages of $1,000,000 and he is domiciled in Maryland, ECF No. 1 ¶ 1. Defendants all hail from Minnesota. *Id.* ¶¶ 2–3. Accordingly, this Court has subject matter jurisdiction.

### B.    Personal Jurisdiction

Defendants next contend that the Court lacks specific personal jurisdiction over them, and in any event, the exercise of jurisdiction does not comport with due process. ECF No. 8 at 2–3. At the pleading stage, the Complaint must make plausible the existence of personal jurisdiction. *See Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003); *Hawkins v. i-TV Digitalis Tavkozlesi zrt.*, 935 F.3d 211, 226 (4th Cir. 2019). If "the facts present even a close question" on the existence of jurisdiction, the court should dismiss the action or transfer the case. *Dring v. Sullivan*, 423 F. Supp. 2d 540, 549 (D. Md. 2006).

Fischer argues that this Court retains specific personal jurisdiction over Defendants. ECF No. 12 at 1. To demonstrate the existence of specific personal jurisdiction, a plaintiff must show

the defendant meets the requirements of the forum state's long-arm statute, and that the exercise of jurisdiction satisfies due process. *Christian Sci. Bd. of Dir. of First Church of Christ, Scientist v. Nolan*, 259 F.3d 209, 215 (4th Cir. 2001). Maryland's long-arm statute confers specific personal jurisdiction under a variety of circumstances. Relevant here, § 6-103(b)(4) of the Maryland Courts and Judicial Proceedings Code permits jurisdiction over an out-of-state defendant who "causes tortious injury in the State," and either "regularly does or solicits business" or "derives substantial revenue" in the state. A defendant's contacts with the forum state are measured at the time of the events giving rise to the cause of action. *See* § 6-103(b)(4) ("A court may exercise personal jurisdiction . . . if he . . . *engages* in any other persistent course of conduct in the State . . .") (emphasis added); *Janjua v. Cooper Tire & Rubber Co.*, No. WMN-12-2652, 2014 WL 2803741 at *4 (D. Md. June 19, 2014) ("[A] defendant's 'contacts' with a forum state are measured as of the time the claim arose.") (quoting *Hardnett v. Duquesne Univ.*, 897 F. Supp. 920, 923 (D. Md. 1995)).

When viewing the Complaint facts as true and most favorably to Fischer, they reflect that Defendants not only targeted businesses in Maryland to sell their franchises but also aimed their alleged defamatory statements at Fischer who lives and works in Maryland. Contemporaneous with the alleged defamation, Nautical Bowls courted Dr. Tetteh for the purchase of the franchise. ECF No. 1 ¶¶ 16–17. Likewise, Bryant Amundson, with Rachel's blessing, circulated disparaging information about Fischer to franchise owners. *Id*. ¶ 28–30. Nautical Bowls and the Amundsons also sought the help of Yu, whose audit was particularly targeted at Fischer's Maryland business. *Id*. ¶¶ 48–9, 67. This conduct is sufficient to confer specific personal jurisdiction over Defendants.

Next as to whether the exercise of personal jurisdiction comports with due process, the Court must consider: "(1) the extent to which the defendant 'purposefully avail[ed]' itself of the

5

privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 712 (4th Cir. 2002) (internal quotation marks and citation omitted). Where, as here, an out-of-state defendant directs "internet activity" to a Maryland resident, "causing injury that gives rise to a potential claim cognizable in Maryland," due process is satisfied. *Id*. at 714. *See also Carefirst of Maryland, Inc.,* 334 F.3d at 400 (citation omitted).

In this respect, the Fourth Circuit's decision *Young v. New Haven Advoc.*, 315 F.3d 256 (4th Cir. 2002) is particularly instructive. There, the Court held that two Connecticut-based newspapers, sued by a prison warden for publishing an unflattering article about the conditions of his Virginia prison, did not have sufficient contact with the forum state for the case to proceed in a Virginia federal court. *Id.* at 258–63. The Court concluded that the exercise of personal jurisdiction would violate due process because the on-line publications did not "manifest[] an intent to direct their website content . . . to a Virginia audience." *Id*. at 263. By contrast, the Court explained, where "an out-of-state person's Internet activity directed at [the forum state] and causing injury that gives rise to a potential claim cognizable in [that state]," then the exercise of personal jurisdiction over defendants satisfies due process. *Id.* at 262 (quoting *ALS Scan,* 293 F.3d at 711).

Here, Defendants exclusively targeted Fischer, his Maryland-based business, ZivZo, and potential customers looking to retain his services. ECF No. 1 ¶¶ 36–37, 42. Defendants, through Yu, even secured the domain name https://benson-fischer.com to direct persons interested in Fischer to the offending audit. *Id*. ¶ 63. *Cf. Calder v. Jones,* 465 U.S. 783, 789–790 (1984). Because Benson Fischer has lived and worked in Maryland for nearly 50 years, the Court easily

concludes that the Defendants' aimed, at a minimum, the "digital audit" to a Maryland readership, and with the purpose of inflicting reputational harm.  Exercising personal jurisdiction over the Defendants in these circumstances satisfies due process.

### C.    Venue

Defendants next contend that venue is improper under 28 USC §1391(b)(2) because the alleged acts occurred in Minnesota.  ECF No. 8 at 4.  The Court disagrees.  Venue lies either where "any defendant resides, if all defendants are residents of the State in which the district is located" or where "a substantial part of the events or omissions giving rise to the claim occurred."  28 U.S.C. § 1391(b)(1)–(2).  Even though Defendants are located in Minnesota, plainly the offensive and allegedly disparaging online conduct was targeted at Fischer and his business in Maryland.  *See Birara v. Kelel*, No. CV TDC-17-3241, 2019 WL 3208685 at *4 (D. Md. July 16, 2019) (concluding that a substantial part of the events giving rise to the defamation claim occurred in Maryland where the recipients of the offending emails resided); *see also Seidel v. Kirby*, 296 F. Supp. 3d 745, 753–54 (D. Md. 2017) (noting that venue is proper where the defamatory statement "is publicized such that it may harm a plaintiff's reputation") (citation omitted).  Thus, venue is proper in Maryland, and the motion to dismiss pursuant to Rule 12(b)(3) is denied.

### D.    Service of Process

As to service of process, Federal Rule of Civil Procedure 4(h)(1) permits service on a corporation in the same manner as provided in the state where the corporation is located.  In Minnesota, as in Maryland, proper service may be made on the corporation's resident agent. *See* Minn. Stat. § 302A.901(1) ("A process, notice, or demand required or permitted by law to be served upon a corporation may be served either upon the registered agent, if any, of the corporation named in the articles, or upon an officer of the corporation, or upon the secretary of state as provided in section 5.25."). *See also* Md. R. Civ. P. 3-124(d) (service on a corporation may be

7

effectuated by serving the "resident agent, president, secretary, or treasurer."). Rachel Amundson is the registered agent for Nautical Bowls, and she was served on August 8, 2025. ECF No. 7-2. Nautical Bowls' arguments to the contrary are unsupported. Thus, the Complaint will not be dismissed for improper service of process.

### E.      Sufficiency of the Claims

Lastly, the Court addresses whether the claims have been plausibly averred. A motion to dismiss brought pursuant to Rule 12(b)(6) tests the sufficiency of the complaint. *See Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). The Court must accept "the well-pled allegations of the complaint as true" and most favorably to the nonmovant. *Ibarra*, 120 F.3d at 474. To survive a motion to dismiss, a complaint's factual allegations "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). The Court, however, need not credit naked legal conclusion devoid of factual support. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). Rather, the complaint's factual allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. 544, 555 (2007).

Because Fischer is pro se, the Court gives his pleading an especially charitable reading to let all potentially viable claims proceed. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). But "even a *pro se* complaint must be dismissed if it does not allege a 'plausible claim for relief.'" *Forquer v. Schlee*, No. RDB-12-969, 2012 WL 6087491, at *3 (D. Md. Dec. 4, 2012) (quoting *Iqbal*, 556 U.S. at 679). Ultimately, a complaint must "permit the court to infer more than the mere possibility of misconduct based upon its judicial experience and common sense." *Coleman v. Md. Ct. App.*, 626 F.3d 187, 190 (4th Cir. 2010)

8

(quoting *Iqbal*, 556 U.S. at 679) (internal quotes and alterations omitted).

The Complaint alleges claims for false light and defamation arising from Bryant Amundson's email to the franchise owners and from the digital audit. ECF No. 1. Because "an allegation of false light must meet the same legal standards as an allegation of defamation," the false light claim depends on plausibly averring defamation. *Piscatelli v. Van Smith*, 424 Md. 294, 306 (2012). To make plausible a defamation claim, the Complaint must aver sufficient facts to show: (1) the defendant made a defamatory statement to a third person, (2) the statement was false, (3) the defendant was legally at fault in making the statement, and (4) the plaintiff suffered harm. *Id.* (quoting *Indep. Newspapers, Inc. v. Brodie*, 407 Md. 415, 441 (2009)). *See also Doe v. Salisbury Univ.*, 123 F. Supp.3d 748, 757 (D. Md. 2015).

Defendants argue that the claims fail principally because the Complaint does not aver any false statements, and particular to the audit, no facts make plausible that Yu acted as Nautical Bowls' agent. ECF No. 8 at 5–6. As to the first argument, a statement is demonstrably false if it is "not substantially correct" when reading the publication as a whole. *Batson v. Shiflett*, 325 Md. 684, 726 (1992) (citation omitted). General allegations regarding a "broad course of conduct over a lengthy period of time" will not suffice. *Doe v. Salisbury Univ.*, 123 F. Supp.3d at 757–58 (quoting *English Boiler & Tube, Inc. v. W.C. Rouse & Son, Inc.*, 172 F.3d 862, 1999 WL 89125, at *3 (4th Cir. 1999) (table decision)). A statement also is not "false" unless it "would have a different effect on the mind of the reader from that which the pleaded truth would have produced." *Biospherics, Inc. v. Forbes, Inc.*, 151 F.3d 180, 185 (4th Cir. 1998) (quoting *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 517 (1991)).

Turning first to Amundson's email, the Complaint generally asserts that Amundson mischaracterized "several prior lawsuits" involving Fischer. ECF No. 1 ¶ 28. The Complaint,

however, does not identify any specific statement in the email that was demonstrably false. Without a more particular recitation of each claimed false statement alongside a factual basis for why the statement produced a different "effect on the mind of the reader" than the truth would, the claim cannot proceed. *See Biospherics, Inc.*, 151 F.3d at 185; *see also McReady v. O'Malley*, 804 F. Supp. 2d 427, 442 (D. Md. 2011), *aff'd,* 468 F. App'x 391 (4th Cir. 2012) (finding statements were not defamatory as Plaintiff had not shown that they were false).

Next as to the insufficiency of Yu's  relationship to Nautical Bowls, although an employer may be vicariously liable for the defamatory statements made by its employees, *Thomas v. BET Sound-Stage Rest./BrettCo, Inc.,* 61 F. Supp. 2d 448, 457 (D. Md. 1999) (citing *Embrey v. Holly,* 293 Md. 128, 139 (1982)), some facts must make plausible that the employee is an agent of the employer. *Worsham v. Disc. Power, Inc.,* No. CV RDB-20-0008, 2022 WL 3100762 at *5 (D. Md. Aug. 4, 2022), *aff'd*, No. 22-1942, 2023 WL 2570961 (4th Cir. Mar. 20, 2023) (citation omitted).  Three traditional characteristics are relevant to the existence of an agency relationship: "(1) the agent's power to alter the legal relations of the principal; (2) the agent's duty to act primarily for the benefit of the principal; and (3) the principal's right to control the agent." *Danner v. Int'l Freight Sys. Of Wa., LLC*, 855 F. Supp. 2d 433, 454 (D. Md. 2012) (citation omitted).

When viewing the Complaint facts most favorably to Fischer, nothing makes plausible that Yu is Nautical Bowls' agent.  The Complaint broadly avers that "upon information and belief" Nautical Bowls retained Yu.  ECF No. 1 ¶ 37.  But nothing shows, for example, that Nautical Bowls "controlled" Yu, or that Yu had a duty to act for the benefit of the corporation.  *Danner*, 855 F. Supp. 2d at 454.  Merely alleging "Yu was acting as an agent" is no more than a naked legal conclusion couched as a fact.  ECF No. 1 ¶¶ 40–41.  *See Iqbal*, 556 U.S. at 686.  The claim thus fails on this ground alone.

Alternatively, even if Yu were Nautical Bowls' agent, the Complaint fails to plausibly aver any particular defamatory statement included within the digital audit.  The Complaint, for example, takes issue with the audit's naming of Fischer as a "defendant" in a suit against Mercedez Benz when, according to Fischer, he was actually the "plaintiff." *Id*. ¶ 62.  Putting aside whether the misnomer alone would itself be defamatory, the audit did not name Fischer as either plaintiff or defendant but rather reported that Fischer had been "*involved* in a breach of contract lawsuit against a dealership (Euromotorcars/Mercedes-Benz)."  ECF No. 12-3 at 3.[2]  The Complaint avers no other facts to render Fischer's "involvement" in the suit defamatory.  *See Biospherics, Inc.*, 151 F.3d at 185 (misstating the length of time plaintiff took to develop a noncaloric sugar substitute is not defamatory, because the misstatement did not have a "different effect on the mind of the reader from that which the pleaded truth would have produced.") (citation omitted).

Likewise, the Complaint avers that the digital audit falsely portrayed Fischer as carrying "unpaid judgments."  ECF No. 1 ¶ 61.  But the audit actually states that "by 2003," Fischer had "nearly $1 million in legal fee *[sic]* and damages awards from the Flax case remained unpaid."  ECF No. 12-3 at 3. (emphasis added).  The Complaint, however, avers no facts to dispel the veracity of this statement regarding Fischer's financial health in 2003.  Thus, the claim cannot proceed based on this allegation.

The Complaint also takes issue with Yu's opinions which are simply not defamatory as a matter of law.  *McReady*, 804 F. Supp. 2d at 441 (citing *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 339–40 (1974)).  Generally, "an individual cannot be held liable in defamation for a statement of opinion" if "no reasonable reader would consider the term anything but the opinion of the author drawn from circumstances related." *Connolly v. Lanham*, 685 F. Supp. 3d 312, 337 (D. Md. 2023)

---

[2] Like Bryant Amundson's email, the Court considers the digital audit integral to the Complaint.

(citation omitted).  Put differently, statements of opinions can be actionable only if the opinion "can be reasonably interpreted to declare or imply untrue facts." *Id.* (citation omitted).

Fischer does not appreciate the critical distinction between a statement of fact and one of opinion.  For example, the Complaint faults the audit for criticizing Fischer's own self-proclaimed "45+ years" of experience, ECF No. 1 ¶ 54.  But the audit also includes the factual bases for Yu's criticism: namely, that neither ZivZo nor Fischer are recognized by the Better Business Bureau; that ZivZo was not listed by Trustpilot or Yelp; and that *all* 32 online Google reviews of Fischer averaged a perfect score, suggesting fabrication.  ECF No. 12-3 at 4, 8.  The Complaint does not aver that any of the underlying bases for Yu's opinion are themselves false.  Thus, without more, the statement of opinion cannot support the defamation claim.  *Biospherics,* 151 F.3d at 185.

Similarly, the Complaint takes umbrage at Yu's opinion on Fischer's "lack of enduring success." ECF No. 1 ¶ 53.  But again, as the digital audit makes clear, Yu grounds his conclusion in Fischer's episodic involvement in over 50 businesses which, to Yu, "suggest[s] a pattern of starting and exiting" the business ventures.  ECF No. 12-3.  And no facts in the Complaint allege that the basis of Yu's opinion is provably false.  Accordingly, the claims, as pleaded, cannot survive Defendants' challenge.  The Court will grant the motion to dismiss.

## IV.     Dismissal With or Without Prejudice

The Court retains wide discretion in dismissing claims with or without prejudice.  *See Weigel v. Maryland*, 950 F. Supp. 2d 811, 825–26 (D. Md. 2013).  Generally, when a plaintiff has not been afforded an opportunity to amend the complaint, dismissal should be without prejudice. *See Glover v. Loan Science, LLC,* Civ. No. PWG 19-cv-01880, 2020 WL 3960623, at *3 (D. Md. July 13, 2020) (citing *Adams v. Sw. Va. Reg'l Jail Auth.*, 524 F. App'x 899, 900 (4th Cir. 2013)). Also, because Fischer proceeds pro se, the Court will afford him the opportunity to cure the

pleading deficiencies. *See McLean v. United States*, 566 F.3d 391, 400–01 (4th Cir. 2009), abrogated on other grounds in *Lomax v. Ortiz-Marquez*, 140 S. Ct. 1721 (2010). Accordingly, the Court will grant Fischer twenty-one (21) days to file an amended complaint. In it, Fischer must aver with particularity each statement which he contends is provably false and include facts which make plausible the statement's falsity. Failure to file an amended complaint that cures the pleading defects will result in dismissal of the claims with prejudice. If Fischer files an amended complaint, Defendants must answer or otherwise respond to the amended complaint fourteen (14) days thereafter.

**V.      Conclusion**

For the foregoing reasons, the motion to dismiss filed by Defendants Nautical Bowls Franchising, LLC, Bryant Amundson, and Rachel Amundson, at ECF No. 8, is granted. Within twenty-one (21) days, Plaintiff Benson Fischer shall file an amended complaint to cure the pleading deficiencies, if possible.

A separate Order follows.

   03/18/2026                                                    /s/                              
Date                                                Paula Xinis
                                                    United States District Judge

13